[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-13776

_____

TECNICAS REUNIDAS DE TALARA S.A.C.,
a Peruvian corporation,

Petitioner-Appellant,

*versus*

SSK INGENIERIA Y CONSTRUCCION S.A.C.,
a Peruvian corporation,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:21-cv-22206-CMA

_____

Before WILLIAM PRYOR, Chief Judge, LUCK, Circuit Judge, and MOORER,* District Judge.

WILLIAM PRYOR, Chief Judge:

This appeal concerns whether a party to an international arbitration can obtain a vacatur of an adverse arbitral award because two of its attorneys withdrew and joined the opposing party's law firm during the arbitral proceedings. Because Técnicas Reunidas de Talara S.A.C., the losing party in the arbitration, had knowledge of the attorney side-switching but did not object until Técnicas received an adverse award more than a year later, Técnicas waived its right to complain. We affirm the judgment confirming the arbitral award.

## I. BACKGROUND

Técnicas Reunidas de Talara S.A.C., a Peruvian corporation, entered into a general contract to update an oil refinery in Talara, Peru. Técnicas subcontracted with SSK Ingeniería y Construcción S.A.C., another Peruvian corporation, to provide electromechanical work on the refinery project. The contract was governed by Spanish law and required any disputes to be submitted to the International Chamber of Commerce International Court of

---

* The Honorable Terry F. Moorer, United States District Judge for the Southern District of Alabama, sitting by designation.

Arbitration. The contract also required arbitrations to be held in Miami, Florida.

SSK filed a demand for arbitration in the International Court of Arbitration regarding a contractual dispute with Técnicas. SSK was represented throughout the arbitration by Alberto Fortún Costea, an attorney at the Cuatrecasas law firm. Técnicas was represented for a portion of the arbitration by Cristián Conejero and Ramiro Portocarrero, attorneys at the Philippi Prietocarrizosa Ferrero DU & Uria law firm. An associate of that firm, Gianfranco Lotito, also represented Técnicas.

In early March 2020, Conejero participated in the final arbitration hearing, which was held in Spain by agreement of the parties. Conejero delivered a portion of Técnicas's opening statement and cross-examined two of SSK's witnesses. At the conclusion of the hearing, Conejero told Leandro Meneses, Técnicas's corporate representative for the arbitration, that he would be leaving Ferrero DU to form his own international arbitration boutique, Conejero y Asociados.

On April 10, 2020, Conejero emailed Meneses to inform him that Conejero and Lotito had left Ferrero DU to join Cuatrecasas on March 31, 2020. That email was the first time that Conejero had communicated to Técnicas that he was leaving Ferrero DU to join Cuatrecasas, but Portocarrero had informed Técnicas on April 9, 2020, about the move.

The next business day, April 13, Conejero informed the arbitral panel and the lead counsels, Portocarrero and Costea, that he and his associate Lotito were leaving Ferrero DU to join Cuatrecasas. In his letter, he asked for this information to be kept confidential. And he explained that both he and Lotito would "maintain continued and absolute confidentiality on the matters we have discussed in the framework of the privileged attorney-client relationship."

On April 14, the parties requested an extension to file post-hearing briefs, and those briefs were submitted on April 21. Neither the briefs nor the request for the extension mentioned Conejero's departure from Ferrero DU for Cuatrecasas.

On March 18, 2021, the arbitral panel issued a $40 million award to SSK, and that award was transmitted to Técnicas on March 29, 2021. More than a month later, on April 28, 2021, Técnicas objected in the International Court of Arbitration to alleged conflicts of interest held by the arbitrators, but its objection made no mention of Conejero's move to Cuatrecasas.

On June 16, 2021, Técnicas filed a petition to vacate the arbitral award in federal court alleging that Conejero and Lotito's move to Cuatrecasas created "a direct, material, adverse, and non-waivable conflict of interest." Técnicas argued that under the New York Convention, see Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517, as enforceable through the Federal Arbitration Act, 9 U.S.C. §§ 201–08, an international arbitral award must be vacated if "there

is an explicit, well-defined and dominant [United States] policy which the award contravenes or violates." Técnicas alleged that attorney side-switching during an arbitration proceeding violates the public policy of the United States, relying on the Florida Rules of Professional Conduct.

SSK moved to dismiss the petition to vacate and for monetary sanctions against Técnicas and argued that the award should be confirmed. It argued that Técnicas's petition was deficient because the New York "Convention does not provide a cause of action for vacatur of arbitral awards." It also argued that "the Florida Rules of Professional Conduct do not apply to . . . Conejero and Lotito" because they never "engaged in a permitted representation in Florida." (Emphasis omitted.) SSK argued alternatively that Técnicas waived its objection to the alleged unethical conduct because it was aware of the conduct but failed to raise it until an adverse award issued. SSK also argued that Técnicas was not prejudiced by Conejero and Lotito's move to Cuatrecasas, and so the award itself did not contravene public policy. And SSK argued that Técnicas should be sanctioned because Técnicas's claims were objectively frivolous, and the petition was filed for the improper purpose of delaying enforcement of an arbitral award. *See* FED. R. CIV. P. 11(b)–(c).

Técnicas argued that because Florida was the seat of the arbitration, the Florida Rules of Professional Conduct applied and that it was irrelevant that Conejero and Lotito were never physically present in Florida. Técnicas also argued that it did not waive

its objection to the side-switching because "Conejero and Lotito never informed [Técnicas] of its legal rights and did not seek or obtain [Técnicas]'s written, signed waiver of, or informed consent to, the conflict of interest before agreeing to join Cuatrecasas." Técnicas argued that it did not need to show prejudice or taint of the arbitral proceedings because prejudice is presumed when a lawyer switches sides. And Técnicas argued that the arbitral award contravenes the public policy of Florida and the United States because the proceeding was "fundamentally unjust" due to the side-switching.

The district court construed SSK's motion to dismiss as a motion to confirm the award and granted the motion, but it denied the motion for sanctions. The district court first explained that the Panama Convention, not the New York Convention, governed the proceedings because both SSK and Técnicas were Peruvian corporations and Peru ratified the Panama Convention and is a member of the Organization of American States. *See* 9 U.S.C. §§ 301–07. Nevertheless, the district court concluded that the parties' mistake about the relevant convention was "of little concern" because "there is no substantive difference between the two Conventions." (Internal quotation marks omitted.) And it explained that it was bound by decisions of this Court "permitting vacatur under" the conventions. The district court then concluded that Técnicas's arguments were not frivolous and denied the motion for sanctions.

The district court explained that to vacate an arbitral award under the public-policy defense, the "award [must] be contrary to an explicit, well-defined, and dominant, United States public policy

such that enforcement would be fundamentally unfair." (Alterations adopted and internal quotation marks omitted.) The district court agreed with Técnicas that a public policy against attorney side-switching exists in the United States but concluded that the public policy was not contravened in this case because there was no actual prejudice and Técnicas waived its objection to the side-switching. It explained that, although it is true that prejudice is presumed in a motion-to-disqualify context, when parties proceed to final judgment "a showing of prejudice is required in order to reverse the final judgment," and Técnicas "ha[d] offered no evidence of actual prejudice." (Internal quotation marks omitted.) It explained that Técnicas also waived its objection to the potentially unethical behavior because "[i]n an effort to discourage tactical gamesmanship, courts in the United States require that a party object with reasonable promptness after a party discovers the facts underlying a purported conflict." (Internal quotation marks omitted.) The district court reasoned that to hold otherwise would allow Técnicas to "keep a proverbial ace up its sleeve" by "wait[ing] until it received a final adverse ruling to state its concerns." (Internal quotation marks omitted.)

## II. STANDARDS OF REVIEW

We review *de novo* the confirmation of an arbitral award under the Panama Convention based on the lack of a valid public-policy defense to enforcement. *See Indus. Risk Insurers v. M.A.N. Gutehoffnungshütte GmbH*, 141 F.3d 1434, 1443 (11th Cir. 1998) (explaining the standard applied under the New York Convention);

Corporación Mexicana De Mantenimiento Integral, S. De R.L. De C.V. v. Pemex-Exploración Y Producción, 832 F.3d 92, 105 (2d Cir. 2016) (explaining that the same standards apply to the Panama Convention and the New York Convention); accord Corporacion AIC, SA v. Hidroelectrica Santa Rita S.A., 34 F.4th 1290, 1293 (11th Cir. 2022). We review the factual findings of the district court for clear error. Hidroelectrica Santa Rita, 34 F.4th at 1293. It is a familiar "general rule . . . [that] our review of an arbitration decision . . . is extremely limited" and is "'among the narrowest known to the law.'" Id. (quoting AIG Baker Sterling Heights, LLC v. Am. Multi-Cinema, Inc., 508 F.3d 995, 1001 (11th Cir. 2007)).

## III. DISCUSSION

Federal review of an international arbitration is often governed by either the New York Convention or the Panama Convention. 9 U.S.C. §§ 202, 305. Where "the requirements for application of both" the New York Convention and the Panama Convention "are met," we apply the Panama Convention "[i]f a majority of the parties to the arbitration agreement are citizens of a State or States that have ratified or acceded to the [Panama Convention] and are member States of the Organization of American States." Id. § 305.

We apply the Panama Convention here. The parties are both citizens of Peru, a foreign state. See Indus. Risk Insurers, 141 F.3d at 1441 (explaining that an arbitration not entirely between citizens of the United States is reviewed under section 202 of the Arbitration Act); 9 U.S.C. § 302 (incorporating sections 202, 203, 204, 205, and 207 of the Arbitration Act to apply to arbitrations

governed by the Panama Convention). And Peru has ratified that convention and is a member of the Organization of American States. *See* Inter-American Convention on International Commercial Arbitration, Jan. 30, 1975, S. Treaty Doc. No. 97-12 (1981) (Panama Convention), 1438 U.N.T.S. 245 (ratification by Peru effective June 21, 1989, 1761 U.N.T.S. 321); Charter of the Organization of American States, Apr. 30, 1948, 2 U.S.T. 2394, 119 U.N.T.S. 3 (ratification by Peru effective February 12, 1954, 186 U.N.T.S. 322). The Panama Convention lists seven defenses, which provide the exclusive grounds for vacatur. Panama Convention, 1438 U.N.T.S. at 250; *Hidroelectrica Santa Rita*, 34 F.4th at 1298.

The parties dispute only whether the arbitral award should be vacated or confirmed under the public-policy defense. That defense succeeds if "the recognition or execution of the [arbitral] decision would be contrary to the public policy *(ordre public)* of" the United States. Panama Convention, 1438 U.N.T.S. at 250. And it is well-settled that where the New York and Panama Conventions are substantively the same, as they are in the context of the public-policy defense, decisions under the New York Convention apply with equal force to cases under the Panama Convention. 9 U.S.C. § 302; *see, e.g.*, *Pemex-Exploración Y Producción*, 832 F.3d at 105; *Goldgroup Res., Inc., v. DynaResource de Mexico, S.A. de C.V.*, 994 F.3d 1181, 1188 n.4 (10th Cir. 2021).

The public-policy defense is exceedingly narrow and rarely successful. *See Cvoro v. Carnival Corp.*, 941 F.3d 487, 496 (11th Cir. 2019). We *must* confirm the award unless Técnicas "successfully

asserts" the defense. *Id.* at 495 (alteration adopted) (internal quotation marks omitted). The party opposing confirmation of the award "has the burden of proving" the public-policy defense. *Id.*

"The public-policy defense under the Convention is very narrow and is likewise to be construed narrowly in [the] light of the presumption favoring enforcement of international arbitral awards." *Id.* at 496 (alteration adopted) (internal quotation marks omitted). The defense applies only to "violations of an explicit public policy that is well-defined and dominant and is ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." *Id.* (internal quotation marks omitted); *see also W.R. Grace & Co. v. Loc. Union 759, Int'l Union of United Rubber, Cork, Linoleum & Plastic Workers of Am.*, 461 U.S. 757, 766 (1983). Put another way, the defense "applies only when confirmation or enforcement of a foreign arbitration award would violate the forum state's most basic notions of morality and justice." *Inversiones y Procesadora Tropical INPROTSA, S.A., v. Del Monte Int'l GmbH*, 921 F.3d 1291, 1306 (11th Cir. 2019) (internal quotation marks omitted). This defense is "frequently raised," but it is "rarely . . . successful." *Cvoro*, 941 F.3d at 496 (internal quotation marks omitted). Even where a legitimate public policy is identified by the party opposing the confirmation of an award, we "must consider that the United States has a federal policy in favor of arbitral dispute resolution which applies with special force in the field of international commerce." *Id.* at 499 (internal quotation marks omitted).

A party can also waive challenges based on the public-policy defense. *See* RESTATEMENT U.S. L. OF INT'L COM. & INVESTOR-STATE ARB. § 4.16 cmt. g (AM. L. INST., Proposed Final Draft 2019). "Waiver may be the result of either express consent or a failure to raise an objection in a clear and timely manner." *Id.* § 4.23(c); *see also id.* § 4.23 cmt. a ("In order to preserve its objections to procedural aspects of the arbitration, a party must make its objection known to the arbitral tribunal in a clear and timely manner so as to permit correction or remediation of defects."). "Any other rule would undermine the efficiency and fairness of arbitral proceedings by leaving awards subject to undisclosed objections that might have been remedied if properly raised." *Id.* § 4.23 cmt. a. "The timeliness of an objection depends on several factors," the most important of which are "when the information upon which the objection is based first became known, or should have become known, to the complaining party and what has occurred in the interval between the time a party learned the relevant information and the time it asserted its objection." *Id.* § 4.23 n. b. And when "a party has knowledge of facts possibly indicating [an ethical problem tainting the arbitration proceedings] he cannot remain silent and later object to the award of the arbitrators on that ground. His silence constitutes a waiver of the objection." *See AAOT Foreign Econ. Ass'n (VO) Technostroyexport v. Int'l Dev. & Trade Servs., Inc.*, 139 F.3d 980, 982 (2d Cir. 1998) (internal quotation marks omitted).

Técnicas argues that attorney side-switching violates the public policy of the United States and Florida and that vacatur is warranted, but we disagree. Técnicas knew of the side-switching and failed to timely object, so it waived its objection. And that waiver resolves this appeal, even if the attorney side-switching violated the public policy of the United States—a question about which we express no opinion.

To be sure, this Court has held that waiver can occur only when a party has "full knowledge of the facts." See *Middlesex Mut. Ins. Co. v. Levine*, 675 F.2d 1197, 1204 (11th Cir. 1982). But Técnicas knew all the relevant facts about the side-switching during the arbitration. And it waited for more than one year—and for the arbitral panel to issue SSK a $40 million award—to complain. By waiting for the arbitral award to be issued with full knowledge of the facts on which it bases its objection, Técnicas waived its objection. RESTATEMENT, *supra*, § 4.23 n. b (explaining that the time the party knew the facts underlying its objection is relevant as well as at what stage the party raised the objection).

Técnicas raises three arguments for why it did not waive the public-policy violation, and all three arguments fail. First, Técnicas argues that challenges based on the public-policy defense are not waivable and that a decision of one of our sister circuits supports that argument. See *Enron Nigeria Power Holding, Ltd. v. Fed. Republic of Nigeria*, 844 F.3d 281, 287–88 (D.C. Cir. 2016). But that decision is inapposite. There, the parties' contract "expressly waive[d] . . . any right to challenge an award by the arbitrators

anywhere outside the place of arbitration." *Id.* at 287. Our sister circuit explained that parties cannot contractually waive a public-policy defense. *Id.* at 288. But this appeal does not involve ex ante contractual waiver. Here, we conclude only that a party can waive a public-policy defense by failing to raise its objection in a timely manner. RESTATEMENT, *supra*, §§ 4.16 cmt. g, 4.23(c).

Second, Técnicas erroneously argues that it could not have waived its objection because there was no avenue to challenge the side-switching during the arbitral proceedings. An arbitral tribunal may "order any interim or conservatory measure it deems appropriate" at the request of a party, ICC ARB. RULES, art. 28 (2021), and "[c]ourts generally refer to the arbitral tribunal issues regarding disqualification of counsel," RESTATEMENT, *supra*, § 3.9(d). And arbitral tribunals have the power to disqualify conflicted attorneys. *See id.* § 3.9 cmt. c.

Third, Técnicas argues that challenges based on the public-policy defense can be raised only at the award-enforcement stage. To be sure, the public-policy defense against enforcement of an arbitral award applies only in enforcement proceedings. Panama Convention, 1438 U.N.T.S. at 250. But the question here is whether a failure to object to the underlying legal error waives a future challenge at the enforcement stage. Here, we know that issues about attorneys' conflicts of interest can be raised during arbitral proceedings. RESTATEMENT, *supra*, § 3.9 cmt. c. And we know that challenges based on the public-policy defense can be waived if the objection was not timely raised. *Id.* §§ 4.16 cmt. g, 4.23(c). Técnicas

14                    Opinion of the Court                21-13776

both knew about the side-switching and could have objected during the arbitral proceedings. Because Técnicas failed to raise a timely objection to the side-switching—or any objection, until the enforcement stage—it waived a public-policy defense based on the side-switching.

Our decision in *University Commons-Urbana, Ltd. v. Universal Constructors Inc.*, 304 F.3d 1331 (11th Cir. 2002), is not to the contrary. In that decision, we vacated the confirmation of an arbitral award under the Arbitration Act and remanded to the district court for an evidentiary hearing regarding an arbitrator's disclosure of potential conflicts. *Id.* at 1345. We held that the party seeking to vacate the award did not waive its objection to the arbitrator's potential bias because the party did not have full knowledge of the facts underlying its objection. *Id.* at 1340–41. And we explained that, although the arbitrator disclosed some information about the purported conflicts, the arbitrator needed to disclose enough information about the conflicts such that "a reasonable person" would "realize that a potential conflict existed" and would be able to object. *Id.* at 1341. In *Universal Constructors*, the arbitrator's disclosure left out crucial details about the conflicting relationships. For example, the arbitrator explained that he knew and had practiced with the attorney for one of the parties, but he did not disclose that he was currently co-counsel with that attorney in a state court action. *Id.* at 1339–42. Here, by contrast, it is undisputed that all the underlying facts giving rise to the conflict—that

the attorneys went to work at a firm representing SSK—were known more than a year before the arbitral panel issued its award.

Our conclusion is consistent with the "well settled" principle in the United States "that a party may not sit idle through an arbitration procedure and then collaterally attack that procedure on grounds not raised . . . when the result turns out to be adverse." *Marino v. Writers Guild of Am., E., Inc.*, 992 F.2d 1480, 1484 (9th Cir. 1993); *accord Brook v. Peak Int'l, Ltd.*, 294 F.3d 668, 674 (5th Cir. 2002); *United Food & Com. Workers, Loc. 400 v. Marval Poultry Co.*, 876 F.2d 346, 352 (4th Cir. 1989). The district court correctly explained that to conclude otherwise would allow Técnicas to "keep a proverbial ace up its sleeve" by "wait[ing] until it received a final adverse ruling to state its concerns." (Internal quotation marks omitted.) "Any other rule would undermine the efficiency and fairness of arbitral proceedings," RESTATEMENT, *supra*, § 4.23 cmt. a, and would be contrary to our federal policy of enforcing arbitral awards, *Cvoro*, 941 F.3d at 499.

## IV. CONCLUSION

We **AFFIRM** the judgment in favor of SSK.