[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-14408

_____

GRUPO UNIDOS POR EL CANAL, S.A.,
SACYR, S.A.,
WEBUILD, S.P.A.,
JAN DE NUL, N.V.,

                                               Plaintiffs-Appellants,

*versus*

AUTORIDAD DEL CANAL DE PANAMA,

                                               Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

D.C. Docket No. 1:20-cv-24867-RNS

————————————

Before WILLIAM PRYOR, Chief Judge, and HULL, and MARCUS, Circuit Judges.

MARCUS, Circuit Judge:

This appeal requires us to decide whether the losing party to an international arbitration can obtain a vacatur of the award because the arbitrators failed to disclose their involvement in unrelated arbitrations. After Grupo Unidos por el Canal, S.A., received two adverse awards amounting to more than a quarter-billion dollars in an arbitration arising out of its construction work on the Panama Canal, Grupo Unidos sought wide-ranging disclosures from each of the three members of the panel pertaining to possible bias. Each arbitrator disclosed for the first time that he had served on panels in other, unrelated arbitrations in which an arbitrator or counsel involved in Grupo Unidos's arbitration also participated.

Following the disclosures of the new information, Grupo Unidos challenged the impartiality of the arbitrators before the International Court of Arbitration ("ICA") of the International Chamber of Commerce. The ICA agreed that some arbitrators failed to make a few disclosures but, notably, did not find any basis for removal and rejected Grupo Unidos's challenges on the merits. Thereafter, Grupo Unidos moved -- unsuccessfully -- for the vacatur of the awards in the United States District Court for the Southern District of Florida. Autoridad del Canal de Panama, in turn,

cross-moved for confirmation of the awards, which the district court granted.

Grupo Unidos timely appealed this decision in our Court, arguing that the awards should either be vacated or not confirmed under three different provisions of Article V of the New York Convention. But, after oral argument, this Court, sitting *en banc*, held that Chapter 1 of the Federal Arbitration Act -- not Article V of the New York Convention -- provides the proper grounds for vacatur of international arbitration awards where the New York Convention governs and the United States is the primary jurisdiction. *Corporación AIC, SA v. Hidroeléctrica Santa Rita S.A.*, 66 F.4th 876, 880 (11th Cir. 2023) (en banc). Thus, the questions for us are whether the two arbitral awards at issue in this case should be vacated under Chapter 1 of the Federal Arbitration Act or not confirmed under Article V of the New York Convention.

Because we agree with the International Court of Arbitration and the district court that Grupo Unidos has presented nothing that comes near the high threshold required for vacatur, we affirm the denial of vacatur and the confirmation of the awards.

## I.

## A.

Grupo Unidos, an incorporated consortium of European companies (collectively "Grupo Unidos"), won a multibillion-dollar bid to design and construct a new set of locks to expand the Panama Canal. Construction began in 2009, and the consortium

planned to finish its work by October 2014.  But after complications caused progress to be "severely delayed and disrupted," Grupo Unidos did not complete construction until over twenty months past the deadline.  Liability disputes soon followed.  As of last count, the parties had entered into seven arbitrations; this appeal concerns one of them -- the Panama 1 Arbitration, where Grupo Unidos brought several contractual claims against the canal authority, Autoridad del Canal de Panama.

Grupo Unidos's contract with the canal authority required that any disputes be resolved through arbitration in Miami, Florida, under the Rules of Arbitration of the International Chamber of Commerce ("ICC Rules").  Pursuant to the ICC Rules, both parties nominate one arbitrator for confirmation by the ICA.  ICC Rules arts. 12(4), 13.  Then, the ICA appoints a president of the tribunal, unless the parties agree upon a different procedure.  *Id.* arts. 12(5), 13.

In March 2015, Autoridad del Canal nominated Dr. Robert Gaitskell, an engineer and a lawyer who specializes in construction cases.  The next month, Grupo Unidos nominated Claus von Wobeser, a lawyer and the former president of the Mexican chapter of the ICC.  The ICA confirmed both men in July 2015.  The parties agreed on their own procedure to appoint a president, which led to the nomination of Pierre-Yves Gunter, a lawyer who heads the international arbitration group at a Swiss firm.  The ICA confirmed him, too, in April 2016.  All three arbitrators had considerable experience in international arbitration, collectively boasting

more than 500 arbitrations over the course of their combined careers, and each bringing relevant expertise to this construction contract dispute.

After confirmation, and with the panel all set, the ICC Rules required each arbitrator to submit "a statement of acceptance, availability, impartiality and independence," including "any facts or circumstances which might be of such a nature as to call into question the arbitrator's independence in the eyes of the parties" or "could give rise to reasonable doubts as to the arbitrator's impartiality." *Id.* art. 11(2)–(3). Accordingly, each of the three arbitrators submitted a form entitled "ICC Arbitrator Statement Acceptance, Availability, Impartiality and Independence."

Gaitskell accepted his appointment "with disclosure." He submitted a statement of impartiality in conformity with the ICC Rules. He also noted that, "[a]s the parties [were] aware, [he was] already a co-arbitrator in [an] associated case," which was one of the several other arbitrations over the canal. And he disclosed that he was an arbitrator in twenty-two pending proceedings, eight as a sole arbitrator or tribunal chair and fourteen as a co-arbitrator.

Von Wobeser checked off an identical statement of impartiality. In his "[a]nnex" to the statement, he also "confirm[ed] that there [were] no circumstances which could lead . . . any of the parties in this arbitration to question [his] independence or impartiality of judgement in this case" and that he had "not had any professional, work relationship or any other nature with the parties to this arbitration." He acknowledged that "[b]oth . . . counsel in this

arbitration are important law firms active in international arbitration and therefore [he had] and ha[s] professional relationship[s] with both law firms," and that he "was appointed by Panama" in another international arbitration "which ha[d] already concluded." He reassured the parties that none of these circumstances "in any way affect [his] impartiality of judgement in the present arbitration." Finally, he reported that he was taking part in fourteen pending arbitrations: one as a sole arbitrator or tribunal chair, seven as a co-arbitrator, and six as counsel.

Gunter submitted two statements. In each, he indicated that he had "[n]othing to disclose," and ticked a box confirming the following statement:

> I am impartial and independent and intend to remain
> so. To the best of my knowledge, and having made
> due enquiry, there are no facts or circumstances, past
> or present, that I should disclose because they might
> be of such a nature as to call into question my inde-
> pendence in the eyes of any of the parties and no cir-
> cumstances that could give rise to reasonable doubts
> as to my impartiality.

He also noted that he was involved in twenty pending arbitrations -- eight as a sole arbitrator or tribunal chair, seven as a co-arbitrator, and five as counsel -- and two pending court litigations as counsel. At that time, neither party requested any additional information from any of the three arbitrators.

Over the next five years, the arbitration took place. The proceedings included over 3,500 pages of pleadings; 78 fact witnesses; 63 expert witnesses; over 3,500 exhibits; a 20-day merits hearing; and around 1,290 pages of post-hearing briefs. On September 21, 2020, the tribunal issued a Partial Award, which addressed liability and the main damages determinations. The Partial Award dismissed most of Grupo Unidos's claims but awarded it $26,838,878.20. Meanwhile, the tribunal awarded Autoridad del Canal $265,299,500.00, resulting in a net win of $238,460,621.80 plus interest.

Three weeks after the Partial Award was rendered, Grupo Unidos began to question the impartiality of the arbitrators. On October 15, 2020 -- for the first time since the arbitration began five years earlier -- Grupo Unidos asked for additional disclosures from each of the arbitrators of "any facts or circumstances that may affect [the arbitrators'] independence in the eyes of any of the Parties or that could give rise to reasonable doubts as to their impartiality." More specifically, it asked each of them to describe the relationships amongst and between the arbitrators, and with other arbitrators in related arbitration matters between the parties, and with the parties' counsel in any related or unrelated and pending or closed arbitrations.

Gunter, writing for the tribunal, responded that these requests were "different and much broader than" the examples given in the ICC Note to Parties and Arbitral Tribunals on the Conduct of the Arbitration. Nevertheless, each member of the tribunal

provided additional disclosures.  Gunter wrote that he had no disclosures "pursuant to the applicable rules as [he] under[stood] them," but offered some additional disclosures based on Grupo Unidos's request that went "beyond [his] disclosure obligations." Von Wobeser followed suit with a few additional disclosures but "reaffirm[ed] that there are no circumstances that could lead any of the Parties in this arbitration to question [his] independence or impartiality of judgment in this case."  Gaitskell offered disclosures of his own, also denying any improper relationships.

Dissatisfied with these additional disclosures, Grupo Unidos sought more, this time asking for information on any relationships between Gunter's firm and the parties since 2013 in any unrelated matters, and the process that led to Gunter's and Gaitskell's appointments in other arbitrations.  The arbitrators once again responded, providing still more contacts between themselves and the parties.

Four disclosures made during these inquiries are relevant to this appeal.  First, while the Panama 1 Arbitration was pending, Gaitskell served as an arbitrator in an unrelated arbitration in which Gaitskell and his co-arbitrator nominated (and the ICA confirmed) Gunter to serve as tribunal president.  That arbitration involved entirely different counsel and different parties.  Second, while the Panama 1 Arbitration was ongoing, von Wobeser served as an arbitrator in an unrelated arbitration with a co-arbitrator Andres Jana, who serves as one of Autoridad del Canal's attorneys in the instant arbitration.  Third, several years before the Panama 1

Arbitration began, Gaitskell served as an arbitrator in an unrelated arbitration with another co-arbitrator James Loftis, also one of Autoridad del Canal's attorneys. Fourth, since 2016, Gaitskell has been serving as an arbitrator in an unrelated arbitration in which a different party is represented by Manus McMullan, another of Autoridad del Canal's attorneys in the Panama 1 Arbitration.

Prior to the issuance of a Final Award, Grupo Unidos filed an application with the ICA seeking the removal of each of the tribunal members based on three of these four disclosures and other, similar pieces of information. *See* ICC Rules art. 14. Grupo Unidos argued that "all three members of the Tribunal . . . withheld important connections" that were "highly problematic" and that brought their neutrality into question. After weeks of proceedings, including written submissions and arguments, the ICA found that there was no conflict warranting disqualification, concluding that there was no merit in any of Grupo Unidos's challenges. The ICA did observe that Gaitskell should have disclosed his arbitration where McMullan appeared, and that von Wobeser should have disclosed his arbitration when he was serving with Jana. But none of these facts led it to question the arbitrators' independence or impartiality, and the ICA rejected Grupo Unidos's challenges.

Having survived an attempt to disqualify each of its members, the tribunal issued a Final Award on February 17, 2021. The award addressed the remaining issues of liability and the main damages determination, ultimately resulting in a final award of some

10                    Opinion of the Court                    21-14408

$285 million for Autoridad del Canal.[1]  Grupo Unidos has since paid the damages in full.

On November 25, 2020, while its challenge to the arbitrators was still pending with the ICA, Grupo Unidos moved to vacate the Partial Award in the Southern District of Florida.  A few months later, on April 19, 2021, Grupo Unidos moved to vacate the Final Award in a separate action.  Grupo Unidos made the same basic argument that the arbitrators had evinced evident partiality, asserting that the arbitrators' nondisclosures implicated three defenses to the enforcement of the award under the New York Convention, the agreement that governs international arbitration that the United States has joined and is codified in Chapter 2 of the Federal Arbitration Act ("FAA").  *See* 9 U.S.C. § 201 *et seq.*; *see also* Compl., *Grupo Unidos por el Canal, S.A. v. Autoridad Del Canal De Panama*, No. 21-cv-21509 (S.D. Fla. Apr. 19, 2021).  Specifically, Grupo Unidos pointed to Articles V(2)(b), V(1)(d), and V(1)(b) of the New York Convention, provisions that protect the losing party from the enforcement of an international arbitral award if, respectively, enforcement "would be contrary to the public policy" of the United States, the "arbitral procedure was not in accordance with

_____

[1] The increase in amount due to the canal authority from the Partial Award to the Final Award came from a few lingering merits claims undisposed of at the Partial Award-stage, as well as costs due to the canal authority having prevailed on most claims.

21-14408              Opinion of the Court              11

the agreement of the parties," or the party was "unable to present his case." *See* New York Convention arts. V(1)(b), V(1)(d), V(2)(b).

The district court consolidated both cases and directed the parties to file a consolidated motion to vacate and a consolidated cross-motion to confirm the awards. The district court found that none of the three New York Convention defenses applied to the awards, and it concluded that Grupo Unidos's arguments "depend[ed] on multiple speculative assumptions, each assuming the worst in [the arbitrators'] character," and that "[n]o reasonable person would follow [Grupo Unidos] down this conspiratorial web." Thus, the court denied Grupo Unidos's motion to vacate and granted Autoridad del Canal's cross-motion to confirm the awards.

## B.

Prior to this Court's recent *en banc* opinion in *Corporación AIC*, our case law had long held that international arbitral awards rendered by tribunals seated in the United States were subject to vacatur on the grounds found in Article V of the New York Convention. *Corporación AIC* overruled our prior case law, ruling instead that "in a New York Convention case where the arbitration is seated in the United States, or where United States law governs the conduct of the arbitration, Chapter 1 of the FAA provides the grounds for vacatur of an arbitral award." 66 F.4th at 890.

It is undisputed that this case falls under the New York Convention because the awards arose out of a commercial relationship among parties that are not domiciled in the United States; that this

arbitration was seated in Miami, Florida; that the parties agreed the FAA would govern the arbitration; and, therefore, that the FAA provides the proper basis, if any, for vacatur.  The parties further agreed that, although the initial round of briefing focused on the New York Convention, the dispute over vacatur really boiled down to an argument about the FAA's evident partiality exception. Grupo Unidos added that its Article V arguments remain valid grounds for this Court to refuse confirmation of the awards, even if vacatur was inappropriate.

We agree with the parties that *Corporación AIC* changed the statutory foundation for vacatur, but it did not affect our analysis in any real way, or the results we reach.  The parties' arguments on vacatur -- while framed as arising out of the New York Convention -- were really grounded in the FAA, so we will consider them as FAA arguments.  And their disputes about confirmation are properly based on the New York Convention.  With that, we turn to the merits.

## II.

We review the denial of a motion to vacate and the confirmation of international arbitration awards *de novo*.  *Técnicas Reunidas de Talara S.A.C. v. SSK Ingeniería y Construcción S.A.C.*, 40 F.4th 1339, 1343 (11th Cir. 2022); *Gianelli Money Purchase Plan & Tr. v. ADM Inv. Serv., Inc.*, 146 F.3d 1309, 1311 (11th Cir. 1998).

### A.

If there is one bedrock rule in the law of arbitration, it is that a federal court can vacate an arbitral award only in exceptional circumstances. *See Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 568 (2013); *Gianelli*, 146 F.3d at 1312. In accordance with this country's "liberal federal policy favoring arbitration," *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citation omitted), our courts understand arbitration as a complete method of dispute resolution, not "merely a prelude to a more cumbersome and time-consuming judicial review process," *Hall Street Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576, 588 (2008) (citation omitted). So, almost always, an arbitral award should represent the end, not the start, of a legal dispute. *See AIG Baker Sterling Heights, LLC v. Am. Multi-Cinema, Inc.*, 508 F.3d 995, 1001 (11th Cir. 2007) ("Because arbitration is an alternative to litigation, judicial review of arbitration decisions is 'among the narrowest known to the law.'" (citation omitted)).

The presumption against vacatur applies with even greater force when a federal court reviews an award rendered during an international arbitration. *Mitsubishi Motors Corp. v. Soler Chrysler Plymouth, Inc.*, 473 U.S. 614, 631 (1985). As the Supreme Court has explained, "[t]he goal of the [New York] Convention, and the principal purpose underlying American adoption and implementation of it, was . . . to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced," in recognition of the fact that the complex system of international commerce functions only if its disputes are given consistent and

predictable resolutions around the world. *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n.15 (1973); *see also Mitsubishi Motors*, 473 U.S. at 629–31.  Against this legal backdrop, U.S. courts refrain from unilaterally vacating an award, rendered under international arbitral rules, in all but the most extreme cases.  It is no surprise, then, that although the losing parties to international arbitrations often raise defenses to award enforcement before our courts, those efforts "rarely" succeed. *See Cvoro v. Carnival Corp.*, 941 F.3d 487, 496 (11th Cir. 2019) (citation omitted).

Grupo Unidos contends that the Panama 1 Arbitration presents this Court with one of those rare exceptions.  It argues that the panel's non-disclosures concealed information related to the arbitrators' possible biases and thereby "deprived [Grupo Unidos] of . . . [its] fundamental right to a fair and consensual dispute resolution process."  In particular, it reasons that Gaitskell's nomination of Gunter to serve as president of another arbitral panel, a position that sometimes pays hundreds of thousands of dollars, possibly influenced Gunter to side with Gaitskell.  And it asserts that the arbitrators' work with the canal authority's lawyers in other arbitrations allowed them to become familiar with each other, creating a potential conflict of interest.

Grupo Unidos is correct that both the ICC Rules and this country's arbitration law require arbitrators to disclose information liberally.  Arbitrators must "disclose to the parties any dealing that might create an impression of possible bias." *Univ. Commons-Urbana, Ltd. v. Universal Constructors Inc.*, 304 F.3d 1331,

1338 (11th Cir. 2002) (quoting *Commonwealth Coatings Corp. v. Cont'l Cas. Co.*, 393 U.S. 145, 149 (1968)). And the FAA allows for "an arbitration award [to be] vacated due to the 'evident partiality' of an arbitrator" when "the arbitrator knows of, but fails to disclose, information which would lead a reasonable person to believe that a potential conflict exists." *Id.* at 1339 (citation omitted). So, Grupo Unidos's point that arbitrators should err on the side of greater, not lesser, disclosure is well-taken.

But to the extent that Grupo Unidos seeks to have the entire arbitral awards vacated under this standard simply because the arbitrators worked with each other and with related parties elsewhere, Grupo Unidos finds itself on much shakier footing. To rule for Grupo Unidos, we would need to hold, in essence, that mere indications of professional familiarity are reasonably indicative of possible bias.

Chapter 1 of the FAA offers four grounds that may permit the district court to "make an order vacating the award upon the application of any party to the arbitration." 9 U.S.C. § 10(a). Grupo Unidos points to only one of those four grounds: "where there was evident partiality or corruption in the arbitrators." *Id.* § 10(a)(2). A movant may prove evident partiality "when either (1) an actual conflict exists, or (2) the arbitrator knows of, but fails to disclose, information which would lead a reasonable person to believe that a potential conflict exists." *Univ. Commons*, 304 F.3d at 1339 (citation omitted). That said, "the 'evident partiality' exception is to be strictly construed," and "[t]he alleged partiality must be 'direct,

definite and capable of demonstration rather than remote, uncertain and speculative.'" *Gianelli*, 146 F.3d at 1312 (quoting *Middlesex Mut. Ins. Co. v. Levine*, 675 F.2d 1197, 1202 (11th Cir. 1982)).

Grupo Unidos points to four late-disclosed relationships as proof of evident partiality and grounds for vacatur under § 10(a)(2). The first point Grupo Unidos makes is that Dr. Gaitskell nominated Gunter to serve as the president of another tribunal during the course of the Panama 1 Arbitration. This falls far short of meeting the exacting standard for vacatur.

Grupo Unidos has not provided us with a single case where this Court considered the act of an appointment of one arbitrator by another in a separate case standing alone to be enough evidence to justify vacatur. *Cf. Lozano v. Md. Cas. Co.*, 850 F.2d 1470, 1473 (11th Cir. 1988) (holding that the fact "that arbitrators appoint each other to panels does not *per se* manifest 'evident partiality or corruption'" (citation omitted)). Nor can we find any. There must be more. Thus, for example, we keep an eye out for "undisclosed business relationship[s]" and "dealings" between arbitrators. *Commonwealth Coatings*, 393 U.S. at 147–49. But there was no evidence of any such dealings in this case. This record is barren of any indication that Gunter evinced bias or that he was in any way influenced in the Panama I Arbitration because he was selected to serve in another arbitration proceeding.

Nobody has disputed that there were many sound and impartial reasons for the parties to have chosen Gunter in this case. The record evidence also offers many sound and impartial reasons

for Gaitskell's appointment of Gunter in the other arbitration. In one of Gunter's disclosures, Gunter wrote that when Gaitskell nominated him in the unrelated case, "Gaitskell . . . explained to [Gunter] that [the tribunal was] looking for a President who had experience with construction arbitration cases." Indeed, the record also establishes the nature and extent of Gunter's extensive experience. He has served, at different times, as an arbitrator or counsel in over 220 arbitrations, as a member of the Board of Directors of the Singapore International Arbitration Centre, as a co-chair of the International Arbitration Committee of the American Bar Association, and as a member of the Arbitration Committee of the Geneva Chamber of Commerce's Industry and Services division. Additionally, he is regularly ranked in Who's Who Legal -- and, notably, recommended for his expertise in construction matters. Finally, we repeat that Gunter affirmed in this very case that he was "impartial and independent and intend[ed] to remain so." On this record, a reasonable person would not suspect bias simply because Gaitskell appointed Gunter in an unrelated proceeding.

The second alleged conflict cited by Grupo Unidos is said to inhere in von Wobeser's service with Jana as co-arbitrators in an unrelated arbitration while the Panama 1 Arbitration was ongoing. Grupo Unidos cites *University Commons* to support its claim of evident partiality. The problem with the argument is that in *University Commons*, an arbitrator represented co-defendants in a different, ongoing case with a member of counsel appearing before him in the arbitration. 304 F.3d at 1340. Although we thought that

relationship posed a potential conflict, the relationship between co-arbitrators is fundamentally different than the relationship between two counsel representing co-defendants. Arbitrators do not represent a client. Their job is simple: to hear the case and apply the law in a fair, reasonable, and impartial manner.

Nothing in the record evidence we have seen would cause a reasonable person to suspect that von Wobeser somehow was improperly influenced by Jana. And von Wobeser himself affirmed that he was "impartial and independent and intend[ed] to remain so." Without anything more, it would be "remote, uncertain and speculative" to assume the arbitrator would violate his affirmation of neutrality and independence. *Gianelli*, 146 F.3d at 1312–13; *see also Lifecare Int'l, Inc. v. CD Med., Inc.*, 68 F.3d 429, 4333–35 (11th Cir. 1995).

The third point Grupo Unidos makes is that Gaitskell served along with Loftis as co-arbitrators in a separate, unrelated arbitration before the Panama 1 Arbitration began, and Loftis now serves as a member of the canal authority's counsel. But "standing alone, the fact that an arbitrator . . . had previous contacts with counsel for one of the parties does not suggest evident partiality." *Univ. Commons*, 304 F.3d at 1340. When an arbitrator and counsel had "frequent interactions" in various "arbitrations, mediations, and litigations prior to the arbitration in [that] case," this Court noted that "a large number of . . . encounters" might "imply an inappropriately close association between arbitrator and counsel," but "[c]loser inspection reveal[ed]" that the interactions "result[ed]

[from] the fact that both specialize[d] in construction law in Birmingham, Alabama." *Id.* at 1339–40. We concluded that "[s]uch familiarity due to confluent areas of expertise does not indicate bias." *Id.* at 1340.

Moreover, because Gaitskell served with Loftis as co-arbitrators in an unrelated case before the Panama 1 Arbitration had begun, the link is even more attenuated than von Wobeser and Jana's. Regardless, Gaitskell is an experienced and sought-after arbitrator in this field, and the fact that these individuals overlapped in unrelated, prior arbitrations was hardly a conflict at all, let alone a conflict that requires vacatur. *See Técnicas Reunidas*, 40 F.4th at 1345; *see also In re Andros Compania Maritima, S.A. (Marc Rich & Co., A.G.)*, 579 F.2d 691, 701–02 (2d Cir. 1978) (declining to vacate an award where an arbitrator failed to disclose his past service as co-arbitrator on nineteen panels with an interested party's agent).

For the fourth and final alleged conflict, Grupo Unidos cites the fact that Gaitskell serves as an arbitrator in an unrelated case where McMullan, a member of Autoridad del Canal's counsel, represented a party. We're hard pressed to see how this in any way questions Gaitskell's impartiality. Repeated appearances establish only familiarity, and familiarity "does not indicate bias." *Univ. Commons*, 304 F.3d at 1340. This connection, too, is a non-issue.

It is little wonder, and of little concern, that elite members of the small international arbitration community cross paths in their work. As one of the canal authority's expert witnesses testified, "[w]orldwide, there are only several dozen arbitrators who

would be attractive candidates" for "a proceeding such as the Panama 1 Arbitration." We refuse to grant vacatur simply because these people worked together elsewhere. The record reveals no evidence of *actual* bias in the Panama 1 Arbitration. And as to *possible* bias, Grupo Unidos has established only that some of the arbitration's participants were otherwise familiar with each other, and "familiarity due to confluent areas of expertise does not indicate bias." *Id.* We affirm the order of the district court denying the application to vacate.

## B.

Having found no reason to vacate the awards under Chapter 1 of the FAA, 9 U.S.C. § 10(a)(2), the only remaining question is whether we should decline to confirm the awards under Article V of the New York Convention. *See Corporación AIC*, 66 F.4th at 884 & n.5; *see also* 9 U.S.C. § 207. Grupo Unidos suggests that three different provisions in Article V of the New York Convention -- Articles V(2)(b), V(1)(d), and V(1)(b) -- offer defenses to confirmation and provide separate reasons for denying confirmation. At the end of the day, these arguments are the same ones we have already rejected, although the nomenclature is a little different. We are, therefore, unpersuaded that any of these provisions offer a defense to confirmation.

## 1.

The first defense is whether any of the arbitrators' late-disclosed relationships violated Article V(2)(b) of the New York

Convention, which provides a defense to an arbitral award if "[t]he recognition or enforcement of the award would be contrary to the public policy of that country." New York Convention art. V(2)(b). This defense, too, is "construed narrowly in light of the presumption favoring enforcement of international arbitral awards," *Cvoro*, 941 F.3d at 496, and is "rarely successful," *Técnicas Reunidas*, 40 F.4th at 1344.

To vacate an award under the public policy defense, the moving party must prove "violations of an 'explicit public policy' that is 'well-defined and dominant' and is ascertained 'by reference to the laws and legal precedents and not from general considerations of supposed public interests.'" *Cvoro*, 941 F.3d at 496 (citation omitted). "Put another way, the defense 'applies only when confirmation or enforcement of a foreign arbitration award would violate the forum state's most basic notions of morality and justice.'" *Técnicas Reunidas*, 40 F.4th at 1345 (citation omitted). "The party opposing enforcement of the award, here [Grupo Unidos], has the burden of proving" the violation. *Cvoro*, 941 F.3d at 495.

Undeniably, there is a public policy in the United States against "evident partiality." 9 U.S.C. § 10(a)(2); *see also Commonwealth Coatings*, 393 U.S. at 147. But, as we have already discussed, that public policy was not violated in this case. Thus, for the same reasons we denied the application to vacate on evident partiality grounds, we cannot refuse to confirm them.

**2.**

Next up is whether the tribunal "was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place." New York Convention art. V(1)(d). The parties agreed to follow the ICC Rules and the FAA. Grupo Unidos argued that the composition of the tribunal violated both the ICC Rules and the FAA because the four late disclosures all evinced a level of partiality that Grupo Unidos would not have consented to. Again, the non-disclosures did not violate this country's prohibition against evident partiality. So, here, we focus only on the claim that the arbitration violated the ICC Rules.

The record does not reflect an issue with the composition of the tribunal due to the arbitrators' late disclosures. The ICC Rules were properly followed and enforced. The parties appointed arbitrators, who affirmed their independence and disclosed any potential conflicts. ICC Rules art. 11(2)–(3). Grupo Unidos challenged the arbitrators based on the late disclosures, and the ICA followed the proper procedure when denying that challenge. *Id.* art. 14. True, the ICA noted that Gaitskell should have disclosed his case where McMullan appeared and that von Wobeser should have disclosed his case with Jana. But it did not disqualify either arbitrator for those reasons because it did not find any facts that led it to question either arbitrator's independence or impartiality. As for Gaitskell, the ICA said that the "mere fact" that the counsel appeared in front of him before "is not such as to cast reasonable doubts as to Mr Gaitskell's continued independence or impartiality," and that

"is not changed by [his] failure to timely disclose this circumstance." As for von Wobeser, the ICA observed that, while "Mr von Wobeser's more recent role as arbitrator in an [International Centre for Settlement of Investment Disputes] case sitting together with Mr Jana should have been disclosed as a professional relationship pursuant to the ICC Note," the ICA "does not consider that role to be such that it calls into question Mr von Wobeser's continued independence or impartiality." Thus, while it may have been prudent for Gaitskell and von Wobeser to provide broader disclosures, the ICA did not find any reason to believe that these two arbitrators actually violated ICC Rule 11.

The record shows that "the parties 'explicitly settled on a form' for the arbitration, and 'their commitment [was] respected.'" *Andes Petroleum Ecuador Ltd. v. Occidental Expl. & Prod. Co.*, No. 21-3039-cv, 2023 WL 4004686, at \*2 (2d Cir. June 15, 2023) (alteration in original) (citation omitted). Everything suggests that the ICA reasonably construed its own rules. *Inversiones y Procesadora Tropical INPROTSA, S.A. v. Del Monte Int'l GmbH*, 921 F.3d 1291, 1304 (11th Cir. 2019), *overruled on other grounds by Corporación AIC*, 66 F.4th at 880. So, we see no reason to refuse confirmation of the awards.

### 3.

The final issue raised is whether Grupo Unidos "was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present [its] case." New York Convention art. V(1)(b). Grupo Unidos argues

that this provision mandates "[f]undamental procedural fairness." *See* Restatement (Third) of U.S. Law of Int'l Comm. Arb. § 4.11 cmt. a (Am. L. Inst. Proposed Final Draft, 2019).  According to the Restatement, "this exception is interpreted narrowly and protects only against serious procedural defects that have a material effect on arbitral proceedings, rendering them fundamentally unfair." *Id.* Similarly, other courts have interpreted it to require the forum state's basic due process standards.  *See Soaring Wind Energy, L.L.C. v. Catic USA Inc.*, 946 F.3d 742, 756 (5th Cir. 2020); *Slaney v. Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 592 (7th Cir. 2001); *Iran Aircraft Indus. v. Avco Corp.*, 980 F.2d 141, 145–46 (2d Cir. 1992).  Even assuming the provision requires adherence to this country's basic due process principles, Grupo Unidos cannot succeed on this defense.  The bare minimum of due process is an impartial proceeding, during which the parties had the opportunity to present evidence and confront and rebut what is offered by the other side. *See Harper v. Pro. Prob. Servs. Inc.*, 976 F.3d 1236, 1241 (11th Cir. 2020).  There is no indication in this record that Grupo Unidos did not have a robust opportunity to present evidence and confront the other side's evidence.  And as we have already observed, there is no evidence of partiality in this proceeding.

Accordingly, we affirm the order of the district court denying the application for vacatur and confirming the arbitral awards.[2]

---

[2] The unopposed motion to withdraw as counsel by Caroline Edsall Littleton is also granted.

21-14408                Opinion of the Court                25

AFFIRMED.