[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-10467

_____

BISCAYNE BEACH CLUB CONDOMINIUM
ASSOCIATION, INC.,

                              Plaintiff-Appellee,

*versus*

WESTCHESTER SURPLUS LINES
INSURANCE COMPANY,

                              Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:18-cv-23105-MGC

_____

Before WILLIAM PRYOR, Chief Judge, and JILL PRYOR and BRASHER, Circuit Judges.

WILLIAM PRYOR, Chief Judge:

This appeal requires us to decide whether an insurer waived its objections to an appraiser's partiality by not objecting before the appraisal issued. Westchester issued a property-insurance policy to Biscayne Beach, which demanded appraisal of a loss that storms inflicted on its property. The district court abated Biscayne Beach's action, and the parties retained their appraisers, who then selected an umpire to complete the panel. The day the panel met for final negotiations, Biscayne Beach's appraiser disclosed for the first time—15 months after his retention—that he thought he had a financial stake in the award on account of a contingency-fee retainer. Westchester did not object, and the panel issued its award over a month later. Westchester later moved to reopen the action and to vacate the award on the ground that the appraiser had acted partially. The district court denied the motion—in part because it ruled that Westchester had waived any objection to the appraiser's partiality by not objecting sooner—and confirmed the award. We affirm because Westchester waived its objection to the appraiser's partiality.

## I. BACKGROUND

Biscayne Beach Club Condominium insured a Miami property with a policy issued by Westchester Surplus Lines. The Policy covered certain "direct physical loss." Biscayne Beach filed claims for coverage after storms ravaged the property. Unsatisfied with

Westchester's payments on the loss, Biscayne Beach sued in state court, and Westchester removed to the district court.

Biscayne Beach then exercised its right under the Policy to appraise the amount of loss. The district court abated the action so that the parties could complete the binding process described in the following provision titled "Appraisal," which required each party to select an impartial appraiser and the appraisers to select an umpire:

> If we and you disagree on the value of the property or the amount of loss, either [party] may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding.

Biscayne Beach retained Lester Martinez, its public adjuster, as its appraiser on a 10-percent contingency fee. Westchester objected on the ground that Martinez's retainer created a conflict of interest that would hinder his impartiality. Biscayne Beach then retained Blake Pyka as its appraiser in October 2018. The nature of Pyka's fee arrangement is disputed, as we will explain. Westchester appointed its appraiser, and he and Pyka selected the umpire.

In August 2019, Pyka emailed Martinez an unsigned contingency-fee contract for Martinez's signature. The contract stated

that Pyka would be retained on a one-percent contingency fee. Martinez advised Pyka to revise a term, and Pyka soon returned an updated, still unsigned, contingency-fee contract. Pyka later testified that he sent Martinez the unsigned contract because, at that time, he had "forgot[ten]" "how [he] was getting paid," "couldn't remember" what fee arrangement he had reached with Biscayne Beach, did not think that he had agreed to a contingency fee, and sent the unsigned contract merely as an "offer." Martinez forwarded the updated contract to Biscayne Beach's counsel and asked him to sign it for Pyka.

Counsel called Pyka when he received Martinez's forward and reminded him that the contingency-fee retainer was "not what [they] agreed to." Pyka testified that he had agreed orally to an hourly rate of $325 and that he remembered that agreement when counsel reminded him. Pyka never signed the contingency-fee contract and never had a contingency retainer with Biscayne Beach.

On February 3, 2020—nearly six months after counsel called Pyka—the appraisal panel met for "final negotiations." That morning, Pyka wrote the panel to "note" that he "ha[d] a very small percentage representing this file"—that is, that he was working for Biscayne Beach on a contingency fee. Westchester's appraiser immediately replied to confirm that Pyka's "representation [was] based on a percentage of the [appraisal] outcome." And the umpire asked why the panel was discussing the issue at that time. Pyka responded to those emails by stating that he "wanted to disclose [his retainer] clearly" and that "no influence or bias" would affect his

assessments. Westchester, which had objected in response to Martinez's disclosure of his contingency-fee arrangement, did not object to Pyka's participation in the proceedings.

On March 12, 2020, the panel appraised the loss at about $14 million. On April 10, 2020—more than two months after Pyka's disclosure to the panel and about one month after the award issued—Westchester moved to reopen the action and to conduct discovery to probe Pyka's disclosure and partiality. After discovery, Westchester moved to vacate the award on the ground that Pyka had been partial.

The district court denied the motion and granted Biscayne Beach's motion to confirm the award. The district court "f[ound]" that Westchester had waived its objections to Pyka's partiality by failing to make them sooner. The district court ruled, in the alternative, that the Florida Arbitration Code, not the Federal Arbitration Act, governed the motion to vacate, and that Westchester's arguments about Pyka's partiality failed under the Code as a matter of law and for evidentiary insufficiency.

## II. STANDARDS OF REVIEW

When a district court decides a motion to vacate an arbitration award, we review findings of fact for clear error and legal conclusions *de novo*. *Cat Charter, LLC v. Schurtenberger*, 646 F.3d 836, 842 (11th Cir. 2011). That standard also governs a decision on a motion to vacate an appraisal award. Arbitration and appraisal both involve third-party adjudication of disputes, often monetary, between parties to a contract.

Whether Westchester waived its objections to Pyka's partiality is a legal conclusion that we review *de novo*. The district court "f[ound]" that Westchester waived its objections, and Biscayne Beach argues that we should review that "finding" for clear error. But whether a party waived an objection is a legal question, not a factual issue, even though it turns on factual findings. Biscayne Beach correctly states that the district court made several findings *"relat[ed] to"* waiver: that Westchester knew about Pyka's unsigned contingency fee before the award issued, knew how to object to an appraiser's partiality, and chose to wait to object until the award issued. Westchester does not contest these facts. It disputes the legal conclusion that the district court reached based on them.

## III. DISCUSSION

Westchester challenges the rulings related to waiver, choice of law, and Pyka's partiality. It argues that its decision to not object to Pyka's partiality until a month after the award issued was not waiver. Biscayne Beach counters that it was. Because we agree that Westchester waived its objection to Pyka's partiality, we do not reach Westchester's other arguments. And because the parties assume that federal law governs our analysis of waiver, we do too.

The "general rule" is that a party who knows of an arbitrator's bias must object to his partiality before the award issues. *Apperson v. Fleet Carrier Corp.*, 879 F.2d 1344, 1358–59 (6th Cir. 1989). Absent "exceptional circumstances," courts do not address partiality claims that could have been, and were not, raised during arbitration proceedings. *JCI Commc'ns, Inc. v. Int'l Bhd. of Elec. Workers,*

23-10467               Opinion of the Court                    7

*Loc. 103*, 324 F.3d 42, 51 (1st Cir. 2003). So a party ordinarily waives its objection to an arbitrator's conflict of interest if it knows or should have known of the conflict during proceedings but says nothing. *Light-Age, Inc. v. Ashcroft-Smith*, 922 F.3d 320, 322 (5th Cir. 2019). That these decisions involved arbitration, not appraisal, is no reason to distinguish them.

Our precedent tracks the general rule. A party must "timely object" to an arbitrator's partiality. *See Técnicas Reunidas de Talara S.A.C. v. SSK Ingeniería y Construcción S.A.C.*, 40 F.4th 1339, 1345 (11th Cir. 2022). When a party discovers an arbitrator's conflict, it must "contest" the partiality "at that time" or else "waive[] the right to object in the future." *Univ. Commons-Urbana, Ltd. v. Universal Constructors Inc.*, 304 F.3d 1331, 1340 (11th Cir. 2002). The party may not "sit idle," see whether the award is favorable, and then collaterally attack the proceedings on a ground that it declined to flag sooner. *See Técnicas Reunidas*, 40 F.4th at 1347 (citation and internal quotation marks omitted). Parties to arbitration—or appraisal—must, in the face of known potential bias, object or hold their peace. *See Bianchi v. Roadway Exp., Inc.*, 441 F.3d 1278, 1286 (11th Cir. 2006).

Westchester waived its objection by not raising it sooner. On February 3, 2020, the day the panel began "final negotiations," Pyka disclosed to the panel—which included Westchester's appraiser—what he thought was his contingency agreement with Biscayne Beach. Westchester's appraiser acknowledged the disclosure. The panel signed the final award on March 12, 2020. On April 10,

2020—more than two months after Pyka's disclosure and nearly a month after the award issued—Westchester moved to reopen this action on the ground that Pyka had been partial. That motion was the first sign that Westchester objected to Pyka's partiality. Westchester failed to object "at th[e] time" that Pyka disclosed what he thought was a financial conflict. *See University Commons-Urbana*, 304 F.3d at 1340.

Westchester pins its hope for a contrary ruling on a few sentences in a single decision. In *University Commons-Urbana*, we vacated the confirmation of an arbitration award and remanded for an evidentiary hearing. *See id.* at 1345. The parties who sought vacatur had likely not waived their objection to the arbitrator's partiality, we ruled, because they were not sufficiently aware of the arbitrator's conflict. *Id.* at 1340–41. We explained that further fact-finding might unearth when the arbitrator knew or should have known about his conflict. *See id.* at 1344. We then found it "relevant" whether the arbitrator "delayed disclosing" the conflict "until it was unreasonable" for the parties who were seeking vacatur "to object to his participation." *Id.* And we stated that further fact-finding might prove that the arbitrator's disclosure was so delayed that those parties "could not, as a practical matter"—in the light of the "amount of funds and resources" they had invested in the proceedings—"afford to object" to the arbitrator's continued service on the panel. *Id.*

Westchester's reliance on *University Commons-Urbana* is unpersuasive. The decision held that the parties who sought vacatur

had not waived their objections because they lacked the knowledge needed to make the choice that waiver is. It made no holding about timeliness. And its dictum cuts *against* Westchester: we explained that the parties *would* have waived their objections if they failed to "contest" the arbitrator's partiality "at th[e] time" they discovered it. *Id.* at 1340. Westchester waited two months to cry foul.

Westchester argues that Pyka's disclosure in February 2020 came "too late" for Westchester to "restart the process." But Westchester does not try to explain *why* it could not have objected "at that time." *See id.* The reason cannot be that it had sunk too many resources into the process for objection to be feasible. By asking the district court to reopen this action and vacate the award, Westchester is champing to "restart the process" *now*.

Indeed, it is hard to see how the delayed-disclosure rule could *ever* benefit a party that objects in court to an arbitrator's partiality. For if a conflict were first disclosed so late that the aggrieved party could not "afford," as a "practical matter" of "funds and resources," to object "at that time," *see id.* at 1340, 1344, why would the party later ask a court to vacate the award and force a redo of the very process that could have been cured earlier? The choice to wait to challenge the arbitrator's partiality in court racks up *more* costs than the choice to challenge the arbitrator during the proceedings, however late the disclosure occurred. And a successful challenge in court puts the objecting party where it would have been had it successfully objected during proceedings.

We reject Westchester's counterarguments. To be sure, the party in *Técnicas Reunidas* waited more than a year to object to an arbitrator's bias. *See* 40 F.4th at 1345, 1347. And Westchester waited only two months. But Westchester has not explained why it could not have objected sooner than it did. We are sympathetic to the concern that "inequitable" gamesmanship by one party should not force the other party to either stage an eleventh-hour holdup of the process or bite the bullet of potential bias. Yet Westchester had its chance to challenge Pyka's partiality, chose to wait and see how the appraisal turned out, and now asks the court to restart the process—all while claiming that it would be wasteful to have objected any earlier. Westchester "waived the right to object" to Pyka's partiality by not objecting "at th[e] time" he disclosed it. *See University Commons-Urbana*, 304 F.3d at 1340.

## IV. CONCLUSION

We **AFFIRM** the denial of Westchester's motion to vacate and the confirmation of Biscayne Beach's award.