[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-11835

_____

THE GOLDMAN SACHS TRUST COMPANY, N.A.,
PATRICK LANNON
as Co-Trustees of the Beverly B. Schottenstein Revocable
Trust U/A/D April 5, 2011,

Plaintiffs-Appellees,

*versus*

J.P. MORGAN SECURITIES, LLC,

Defendant,

EVAN A. SCHOTTENSTEIN,
AVI E. SCHOTTENSTEIN,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:21-cv-20521-BB

_____

Before ROSENBAUM, NEWSOM, and LUCK, Circuit Judges.

PER CURIAM:

This appeal considers whether the district court correctly affirmed a unanimous arbitration award that the arbitration panel issued after 43 hearing sessions spanning 145 hours. Appellants Evan Schottenstein and Avi Schottenstein argue that the award should be vacated because (1) the arbitration panel's chairperson did not disclose that she had a lawsuit against State Farm that was dismissed five months before the final hearing began, even though evidence was introduced that Evan[1] had accepted a job at State Farm, and (2) the arbitration panel denied Evan and Avi's request to postpone the final hearing and instead held it virtually. After careful consideration, we reject both arguments and affirm the district court's denial of Evan and Avi's motion to vacate the arbitration award.

_____

[1] Because this case involves four people whose last name is Schottenstein, to avoid confusion, we use these individuals' first names.

*First*, an arbitrator's failure to disclose information results in vacatur of an arbitration award only when evident partiality creates an actual conflict or a reasonable person would believe that a potential conflict exists. Evan and Avi do not claim that an actual conflict existed, and no reasonable person would believe that a potential conflict existed here. State Farm was not involved in the arbitration or events leading up to the dispute, State Farm was mentioned only twice during the 145-hour hearing, and Evan was merely a prospective employee of State Farm with no apparent relation to the chairperson's previously dismissed separate lawsuit.

*Second*, federal courts vacate arbitration awards based on the denial of a request to postpone a hearing only when the arbitration panel had no reasonable basis for denying postponement. But here, several reasonable considerations led the panel to decline to postpone the hearing: the expeditious resolution of the dispute, the claimant's senior age of 94 years, the ongoing COVID-19 pandemic and availability of virtual hearings, and Evan and Avi's consent to holding a virtual hearing five months later, anyway.

Because neither of Evan and Avi's arguments provides a valid basis to vacate the arbitration award, we affirm the decision of the district court.

## I.    BACKGROUND

On July 24, 2019, Beverly[2] Schottenstein demanded arbitration by the Financial Industry Regulatory Authority ("FINRA") against appellants Evan and Avi, her grandsons.  Beverly alleged constructive fraud, common law fraud, and elder abuse and exploitation.

Beverly's allegations arose out of the transfer of her investment assets to a trust account that Evan and Avi managed.  Beverly asserted that Evan and Avi made sales and purchases, commission and fee payments, and a sale that resulted in a huge capital-gains tax, all without her knowledge or authorization.  She also contended that Evan and Avi forged her signature to allow them to make large transactions without her knowledge and set up a fictitious email account in her name so that all financial statements would be sent to that email address instead of to her.

Evan and Avi responded that cousin Alexis Schottenstein fabricated these allegations.  As Evan and Avi told it, Alexis was "jealous" of the gifts Beverly gave them.  These gifts included an apartment, even though Beverly refused to buy Alexis a condominium.  Evan and Avi said that this animosity boiled over when Alexis discovered a draft estate-planning document in Beverly's papers that limited her inheritance.

---

[2] The record contains different spellings of "Beverly."  We use "Beverly" because the case caption refers to the "Beverly B. Schottenstein Revocable Trust."

In Evan and Avi's view, Alexis began to control Beverly. They alleged that she enlisted a cousin, Cathy Schottenstein Pattap, who helped Beverly move her accounts away from Evan and Avi. Then, they claimed, Alexis and Cathy created a document with false allegations against Evan and Avi titled "Outline/Notes of Securities Fraud & Financial Elder Abuse Committed by Evan, Avi and Bobby Schottenstein against Beverl[]y Schottenstein and her Estate." The outline included accusations that Beverly "was not receiving statements on her brokerage account" because Evan created "an online banking portal" with "a fake email address" that he controlled and that Beverly was unaware of.

Allegations from this outline ended up in the statement of claim filed with FINRA. So Evan and Avi asserted, among other defenses, that Alexis made up the allegations. To support this, they pointed to Alexis's past employment at Wells Fargo. They said Alexis was fired from Wells Fargo for enrolling customers in online-statement delivery without their consent. And they argued that Alexis's alleged past misconduct relating to online-statement delivery parallels the allegations against Evan and Avi for misconduct relating to online-statement delivery, casting doubt on the credibility and truthfulness of those allegations.

In furtherance of their theory, Evan and Avi convinced the arbitration panel to issue subpoenas to Wells Fargo and Alexis. Wells Fargo and Alexis both refused to comply with the subpoenas, so Evan and Avi filed an enforcement action in the Southern District of Florida. The magistrate judge there recommended

6                    Opinion of the Court                    22-11835

dismissing the action for lack of subject-matter jurisdiction because the parties lacked diversity—they were all citizens of New York, and the amount in controversy between the parties did not exceed $75,000. *Schottenstein v. Wells Fargo Bank, N.A.*, No. 9:20-mc-81924-RS, 2020 WL 7399003 (S.D. Fla. Dec. 17, 2020). Evan and Avi voluntarily dismissed the enforcement action after the arbitration ended.

Before that happened, though, on March 27, 2020, FINRA postponed all in-person arbitration hearings because of the COVID-19 pandemic. It allowed virtual hearings to take place either by joint agreement or panel order.

On July 23, 2020, Beverly moved for the panel to conduct the final hearing virtually. Evan and Avi opposed this motion. They argued in relevant part that conducting the hearing virtually would impede the "ability to compel documents and testimony from non-FINRA member third parties," and FINRA did not authorize conducting virtual hearings through its formal rule-making process. Evan and Avi asked for the hearing to be postponed from October 2020 to the spring of 2021. They agreed, though, that if in-person hearings were still not permitted by that time, they would not object to virtual proceedings then.

The arbitration panel denied the request to postpone the final hearing. Instead, in an unreasoned order, it directed the final hearing to begin virtually on the day already scheduled in October 2020. The final hearing stretched over 43 sessions and 145 hours. Alexis and Wells Fargo did not testify. But Pattap did testify,

including about the outline that she and Alexis put together and that Evan and Avi claimed contained false allegations.

Also during the final hearing sessions on October 21 and 22, the arbitration panel heard testimony and saw text messages showing that Evan had interviewed for and accepted a job at State Farm related to property insurance. Specifically, Pattap testified that Evan told her in August 2020 that he had "an interview at State Farm Insurance." Then, in a September 2020 text message to Pattap, Evan said, "I just took the job at State Farm." The parties do not point to any evidence suggesting that Evan actually started working at State Farm by the time of the arbitration hearings; in fact, after Evan told Pattap he accepted the job, she asked if he had started working in the State Farm office, and he responded, "No I need to get my property casualty license first."

The arbitration panel unanimously issued an arbitration award in favor of Beverly and against Evan for more than $9 million and Avi for about $602,251. After the panel issued its award, Evan and Avi learned that the arbitration panel's chairperson, Donna Solomon, had filed a lawsuit against State Farm in March 2020, while the arbitration was pending. The lawsuit was a breach-of-contract claim concerning the denial of Solomon's property-insurance claim. And it was not long-lived. The case was dismissed in May 2020, almost five months before the arbitration's final hearings began. Solomon did not disclose her lawsuit against State Farm during the arbitration.

8                    Opinion of the Court                    22-11835

Beverly filed this action to confirm the arbitration award. Evan and Avi moved to vacate the arbitration award on several grounds, including that the arbitration panel wrongly denied their motion to postpone the final hearing and that Solomon should have disclosed her lawsuit against State Farm. The district court rejected these arguments and confirmed the arbitration award. Evan and Avi timely filed this appeal.[3]

## II.    STANDARD OF REVIEW

We review orders confirming arbitration awards "for clear error with respect to factual findings and *de novo* with respect to the district court's legal conclusions." *Gianelli Money Purchase Plan & Trust v. ADM Inv'r Servs., Inc.*, 146 F.3d 1309, 1311 (11th Cir. 1998). We can affirm the district court's judgment denying the motion to vacate the arbitration award "on any ground that finds support in the record." *Grange Mut. Cas. Co. v. Slaughter*, 958 F.3d 1050, 1056 (11th Cir. 2020) (quoting *Wetherbee v. S. Co.*, 754 F.3d 901, 905 (11th Cir. 2014)).

## III.    DISCUSSION

As we've noted, Evan and Avi argue that the arbitration award should be vacated on either of two grounds: (1) the chair-person of the arbitration panel failed to disclose information that

---

[3] We granted the motion to substitute the Goldman Sachs Trust Company, N.A., and Patrick Lannon, Esq., Co-Trustees of the Beverly B. Schottenstein Revocable Trust U/A/D April 5, 2011, as Plaintiffs-Appellees in this action. Substitution Order, ECF No. 53.

they say would have created an impression of possible bias on her part under 9 U.S.C. § 10(a)(2), and (2) the arbitrators were allegedly guilty of misconduct in refusing to postpone the hearing under § 10(a)(3).

Courts vacate an arbitrator's decision "only in very unusual circumstances." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 568 (2013) (citation omitted). Indeed, it is "bedrock rule in the law of arbitration" that federal courts apply restraint in vacating arbitration awards. *Grupo Unidos por el Canal, S.A. v. Autoridad del Canal de Panama*, 78 F.4th 1252, 1261 (11th Cir. 2023), *petition for cert. filed* (U.S. Dec. 15, 2023) (No. 21-14408). This is so because arbitration is meant to be "a complete method of dispute resolution, not 'merely a prelude to a more cumbersome and time-consuming judicial review process.'" *Id.* (citation omitted).

That said, of course, challenges to arbitration awards can merit vacatur. But for the reasons we explain below, Evan and Avi have not shown that any of the § 10(a) grounds for vacatur apply here, and they were not denied a fair hearing.

### A. Solomon's failure to disclose her State Farm lawsuit did not deprive Evan and Avi of a fair hearing.

Evan and Avi argue that the arbitration award should be vacated because the arbitration panel's chairperson, Solomon, failed to disclose information that they say would have created an impression of possible prejudice on her part. Specifically, Solomon had filed a breach-of-contract lawsuit against State Farm for denying a claim under her homeowner's insurance policy. And then, several months after Solomon's lawsuit was dismissed, evidence was presented during the arbitration proceedings showing that Evan had accepted a job with State Farm. Evan argues that a reasonable person would believe that an arbitrator who recently sued State Farm could view its employees as dishonest and could be biased against him.

A federal court may vacate an arbitration award "where there was evident partiality . . . in the arbitrators, or either of them." § 10(a)(2). The partiality must be "direct, definite and capable of demonstration rather than remote, uncertain and speculative." *Middlesex Mut. Ins. Co. v. Levine*, 675 F.2d 1197, 1202 (11th Cir. 1982) (citation omitted). Though the Supreme Court has emphasized the strong policy in favor of leaving arbitration awards undisturbed, it has also cautioned that we must be "scrupulous to safeguard the impartiality of arbitrators" given that they "have completely free rein to decide the law as well as the facts and are not subject to appellate review." *Commonwealth Coatings Corp. v. Continental Cas. Co.*, 393 U.S. 145, 149 (1968).

22-11835                Opinion of the Court                11

We may vacate an arbitration award because of the "evident partiality" of an arbitrator only when either "(1) an actual conflict exists, or (2) the arbitrator knows of, but fails to disclose, information which would lead a reasonable person to believe that a potential conflict exists." *Gianelli*, 146 F.3d at 1313. Evan and Avi do not claim that an actual conflict exists, so we consider whether they have established the second basis for vacatur because of an arbitrator's "evident partiality."

To satisfy the standard for vacatur of an arbitration award based on "evident partiality," a party must show (1) the arbitrator knew of the facts creating a potential conflict; (2) the potential conflict was one that a reasonable person would recognize; and (3) the arbitrator failed to disclose the conflict. *Univ. Commons-Urbana, Ltd. v. Univ. Constructors Inc.*, 304 F.3d 1331, 1341 (11th Cir. 2002). Here, all agree that Solomon was aware that Evan had accepted a job at State Farm and that Solomon did not disclose her lawsuit against State Farm. The dispute focuses on whether a reasonable person would recognize potential partiality.

Here, no reasonable person would believe that Solomon was prejudiced against Evan and Avi because Evan had accepted a job at State Farm. State Farm was not a party to the arbitration, was not involved in the events leading up to the dispute, and was mentioned only twice over the 145 hours of hearing sessions. Plus, Solomon's lawsuit was dismissed nearly five months before the final hearing in the arbitration even began. And there is no evidence that Solomon's lawsuit was so contentious that she would view

every single State Farm employee or prospective employee as being untrustworthy for the rest of her life.  Given the remoteness of State Farm to the arbitration, compounded by the fact that the State Farm litigation had concluded months before the final arbitration hearing began, no reasonable person would have believed a potential conflict existed.

The cases cited by Evan and Avi do not help them.  For instance, the brothers rely on a case where the arbitrator's father was an executive of an international union whose local affiliate was a party to the arbitration. *Morelite Const. Corp. v. N. Y. C. Dist. Council Carpenters Ben. Funds*, 748 F.2d 79, 84 (2d Cir. 1984).  *Morelite* differs from the brothers' case because (1) the arbitrator's close relative was a controlling member of (2) a party to the arbitration, and (3) that close relative's involvement with a party to the arbitration was ongoing throughout the arbitration.  Here, on the other hand, (1) Evan was not an executive with State Farm (or even yet actively employed as a line employee by State Farm); (2) State Farm was not a party to the arbitration; and (3) Solomon's lawsuit against State Farm ended nearly five months before the final hearing in the arbitration began.

Evan and Avi also cite a case where the arbitrator became an executive at a company that was negotiating with one of the executives of a party to the arbitration. *New Regency Prods., Inc. v. Nippon Herald Films, Inc.*, 501 F.3d 1101, 1107 (9th Cir. 2007).  *New Regency* doesn't help the brothers because, unlike in that case, here, (1) neither the arbitrator (Solomon) nor a party to the arbitration

(Evan) was in the process of becoming an executive (which, unlike a line employee, could make decisions controlling the company's policy) at (2) a company that was in ongoing negotiations with (3) a party to the arbitration. Indeed, State Farm was never a party to the arbitration.

And the case the brothers argue is "directly on point" concerned an arbitrator who was involved in separate, ongoing litigation between his employer and a party to the arbitration. *Sun Refining & Marketing Co. v. Statheros Shipping Co. of Monrovia, Liberia*, 761 F. Supp. 293, 302–303 (S.D.N.Y. 1991), *aff'd*, 948 F.2d 1277 (2d Cir. 1991). But that case also differs materially from Evan and Avi's case. Unlike in *Sun Refining*, the arbitrator at issue here (Solomon) (1) was not involved in ongoing litigation with (2) a party to the arbitration. Rather, (1) the litigation Solomon had initiated against State Farm had ended almost five months before the final arbitration hearing began, and (2) State Farm was not a party to the arbitration, and Evan had not been offered a policy-controlling position at State Farm that could be viewed as State Farm itself.

At bottom, too much separation exists between Solomon's relationship with State Farm and the parties to the arbitration. As we've noted, Solomon's lawsuit against State Farm ended months before the final arbitration hearing began and Solomon heard for the first time that State Farm had extended Evan a non-executive employment offer. Plus, Evan's acceptance of a job at State Farm was not a major point in the arbitration. Based on these circumstances, assuming that Solomon was prejudiced against all future

property-insurance employees of State Farm would be purely speculative. And that is not enough.

Evan and Avi further argue that Solomon violated FINRA disclosure rules by failing to disclose her State Farm lawsuit. Those FINRA requirements are separate and apart from the standards this Court applies when considering whether to vacate an award. The controlling question here is not whether Solomon complied with FINRA rules, but rather whether her undisclosed lawsuit against State Farm caused evident partiality. While a FINRA violation could require vacatur under § 10(a)(2), this is not one of those times for the reasons we've already discussed—namely, that no reasonable person could believe that Solomon's concluded lawsuit against arbitration non-party State Farm would have rendered her biased against the brothers because Evan had accepted an employment offer from State Farm.

In the alternative, Evan and Avi ask us to remand the case for discovery and an evidentiary hearing to probe the extent of Solomon's relationship with State Farm and her excuse for not disclosing the lawsuit. In some cases, an evidentiary hearing may be necessary to reveal the nature of a relationship between an arbitrator and a party related to the arbitration, including the number and type of contacts. *See, e.g.*, *Univ. Commons-Urbana*, 304 F.3d at 1341–43 (ordering an evidentiary hearing because there were at least two allegations of evident partiality that had merit but an undeveloped factual record). Here, the parties do not dispute that Solomon filed a breach-of-contract lawsuit against State Farm related to property

insurance while the arbitration was pending, or that Evan later testified that he had accepted a job at State Farm related to property insurance.  No additional information would be helpful to determining whether Solomon's lawsuit against State Farm created a conflict beyond the facts the parties agree to.  Thus, we deny the request to remand for an evidentiary hearing.

### B.  The arbitrators did not engage in misconduct under § 10(a)(3) when they declined to postpone the final hearing.

Evan and Avi also ask us to vacate the arbitration award because the arbitrators denied their request to postpone the final hearing and instead conducted virtual proceedings.  They argue that the panel had no reasonable basis to decline to postpone the hearing because the benefits (expeditiously resolving the dispute, especially in light of Beverly's advanced age) did not outweigh the harms (conducting a virtual final hearing even though FINRA rules did not expressly allow it and allegedly impeding their ability to present third-party evidence).

The brothers further argue that the arbitration panel's denial of their request to postpone the proceedings prejudiced them because it was impossible to enforce subpoenas against Alexis and Wells Fargo.  Specifically, they assert that our decision in *Managed Care Advisory Group LLC v. CIGNA Healthcare, Inc.*, which predated COVID-19 and the widespread reliance on virtual proceedings, restricts an arbitrator's subpoena power "to situations in which the nonparty has been called to appear in the **physical presence** of the

arbitrator," thereby barring subpoena enforcement at the virtual final hearing.  939 F.3d 1145, 1159 (11th Cir. 2019) (citation omitted) (emphasis added).

We are not persuaded.

The Federal Arbitration Act provides that federal courts may vacate arbitration awards "where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown." § 10(a)(3).  The party requesting vacatur bears the burden of proving a violation.  *Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1289 (11th Cir. 2002).

In resolving the brothers' claim, we must first consider whether the arbitration panel had "any reasonable basis" for declining to postpone the hearing.  *Schmidt v. Finberg*, 942 F.2d 1571, 1574 (11th Cir. 1991).  In *Schmidt*, we held that vacatur was not warranted because the arbitration panel may have had several reasons for declining to postpone the hearing, including an interest in the expeditious handling of disputes and the fact that the party seeking the postponement did not explain in any detail what evidence it would have presented had the hearing been postponed.  *Id.* at 1574–75.

As in *Schmidt*, here, the arbitration panel had a reasonable basis for denying the request to postpone the hearing.  For starters, Beverly demanded arbitration on July 24, 2019, and the panel scheduled the parties' final evidentiary hearing to begin on October 19, 2020—almost eighteen months later.  The panel may have

decided that a postponement would "violate the policy of expeditious handling of such disputes." *Id.* at 1574.

Though this was the only reasonable basis that the district court mentioned in affirming the award, we can affirm its judgment "on any ground that finds support in the record." *Grange Mut. Cas. Co.*, 958 F.3d at 1056. And here, several other reasonable bases supported the arbitration panel's decision not to postpone the hearing. For instance, Beverly was 93 years old when she submitted her statement of claim to FINRA on July 25, 2019. FINRA has "recognized a need for expedited hearings in arbitrations involving" seniors and has "encouraged [arbitrators] to consider the health and age of a party when . . . [c]onsidering postponement requests." *Expedited Proceedings for Seniors & Seriously Ill*, FINRA (last visited Jan. 7, 2024), http://www.finra.org/arbitration-mediation/rules-case-resources/special-procedures/expedited-proceedings-seniors-seriously-ill [https://perma.cc/9SW4-5T3E]. So while the interest in expeditious resolution of disputes exists in every matter, it is especially important when the claimant is elderly.

The arbitration panel also had to decide whether to move the hearing to a virtual platform in fall 2020 or hold out hope that the pandemic would abate enough to allow in-person hearings by spring 2021. If in-person proceedings were not possible or safe for the people involved in this arbitration by spring, then the hearing would have been on a virtual platform, anyway. Especially given that Beverly was, at that point, 94 years old and therefore at greater risk from COVID-19 even if in-person hearings could resume, the

panel could have reasonably decided that postponing the hearing for five months on the off chance that in-person proceedings could resume made little sense.

Evan and Avi argue that those reasons do not outweigh the fact that FINRA's Rules did not expressly allow remote proceedings and that holding a virtual hearing allegedly allowed Alexis and Wells Fargo to argue that enforcing their subpoenas was impossible under *Managed Care*. But the test is not whether we, sitting on review, would have made the same decision as the panel. Rather, we ask only whether the panel had a reasonable basis to deny the postponement. And here, it surely did.

Plus, even when a panel had no reasonable basis to deny postponement, we vacate an award only when the arbitrators' choice "prejudice[d] the rights of the parties and denie[d] them a fair hearing." *Robbins v. Day*, 954 F.2d 679, 685 (11th Cir. 1992), *disapproved on other grounds by First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995). Here, that did not happen.

Evan and Avi posit on appeal that the decision not to postpone prevented them from presenting specific evidence from Alexis and Wells Fargo. But their request to the panel for a postponement referred only generally to evidence from "non-FINRA member third parties" without specifically naming Alexis or Wells Fargo. In *Schmidt*, we found no misconduct by the panel in declining to postpone the hearing when the party seeking postponement "did not express a single word to indicate what testimony [the potentially absent witness] would give that would be material to the

issues raised in the claim." 942 F.2d at 1574.  Evan and Avi's request here similarly included not a single word about what specific testimony would be excluded.  Perhaps the arbitration panel may have been able to perceive that Evan and Avi sought to postpone so they could obtain testimony from Alexis and Wells Fargo to show that the allegations were fabricated.  But given that Evan and Avi claimed Pattap worked together with Alexis, "the panel could reasonably have believed that whatever testimony need be given . . . could be given by" Pattap.  *Id.*  And indeed, Pattap testified at the hearing as to the creation of the allegations.

Not only that, but the brothers have not shown that they would have been able to compel Alexis and Wells Fargo's presence at the final hearing even if the final hearing had been in the spring of 2021, which is when they sought to postpone it until.  To be sure, prejudice can occur when an arbitration panel's refusal to postpone a hearing prevents a party from introducing material, noncumulative evidence from key witnesses.  *See Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 20–21 (2d Cir. 1997).  But it was the virtual nature of the hearing that prevented enforcement of the subpoenas against Alexis and Wells Fargo.  And even if the arbitration panel had granted the brothers' request and postponed the hearing until spring 2021, the brothers have not shown that the hearing would have been in person, anyway.  So they've failed to show that Alexis and Wells Fargo would have been able to have been compelled to appear in spring 2021.  In other words, Evan and Avi have not shown prejudice.

As to Evan and Avi's complaint that FINRA Rules did not expressly authorize a virtual proceeding, that fares no better. To be clear, the brothers have not sought vacatur under § 10(a)(4) based on their argument that the panel exceeded its authority in conducting a virtual proceeding. Rather, they argue that the fact that FINRA did not expressly sanction virtual proceedings through its rulemaking process means that the panelists had no reasonable basis to deny the postponement of the hearing. But as of March 27, 2020, FINRA Dispute Resolution expressly offered virtual hearing services to parties "by joint agreement or by panel order." And Evan and Avi's request for postponement consented to a virtual hearing in spring 2021, in any case. So it was not unreasonable for the arbitrators to deny the postponement.

In short, the arbitration panel had a reasonable basis to deny the request to postpone the hearing. And Evan and Avi's rights were not prejudiced by the decision to conduct a virtual hearing. Because the panel had a reasonable basis to deny the request to postpone the hearing, and the denial did not result in prejudice in any case, this ground for vacatur fails.

## IV.  CONCLUSION

**We AFFIRM the district court's denial of the motion to vacate the arbitration award.**